**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **GARY MONTGOMERY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **NO. 3:19-cv-00675** |
| | ) |
| **WELLPATH MEDICAL, ET AL.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Gary Montgomery, a pretrial detainee in the custody of the Davidson County Sheriff's

Office in Nashville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1)

and an application to proceed in forma pauperis (IFP). (Doc. No. 2.) He has also filed a Motion to

Appoint Counsel. (Doc. No. 3.)

After the Court issued an Order notifying Plaintiff that his IFP application was deficient

(Doc. No. 7), Plaintiff cured the deficiency by filing an amendment to his application. (Doc. No.

8.)

### I. Application to Proceed IFP

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing

a civil action may apply for permission to file suit without prepaying the filing fee of $350.00

required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's amended IFP application

that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 8) will be

granted by Order entered contemporaneously herewith.

**II. Initial Review of the Complaint**

**A. PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, 28 U.S.C. § 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim

which [a plaintiff] has not spelled out in his pleading." <u>Brown v. Matauszak</u>, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting <u>Clark v. Nat'l Travelers Life Ins. Co.</u>, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### B. Section 1983 Standard

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. <u>Wurzelbacher v. Jones-Kelley</u>, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. <u>Carl v. Muskegon Cty.</u>, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

Plaintiff alleges that his incarceration in the Davidson County Jail began on May 5, 2016, at which time he received an intake medical screening that did not include dental screening. (Doc. No. 1 at 7.)

On June 21, 2017, Plaintiff received a dental checkup pursuant to his request. He alleges that he had an obviously broken tooth that was sensitive to heat and cold and requested that it be repaired with a crown. (<u>Id.</u>) He also requested teeth cleaning at this appointment. Both services were refused, and a dental technician told Plaintiff that "[W]e don't clean teeth here, we only pull them." (<u>Id.</u>) Plaintiff was offered the option of tooth extraction but declined. Knowing that extraction was the only treatment offered, Plaintiff "continued to tolerate the sensitivity discomfort" throughout 2018. (<u>Id.</u> at 7–8.)

On June 3, 2019, Plaintiff received his second dental examination at the Jail. At this visit, "it was noted that the gaps in Plaintiff's gums were growing larger and that they were bleeding. [The] technician also noted excessive calcified tarter build up present." (Id. at 8.) Plaintiff again requested that his teeth be cleaned, his gums be treated, and that a crown be put on his broken tooth to deal with the sensitivity. (Id.) A technician, Jenny Denest, responded "[T]his is a short term facility and we only offer limited services, but you can have services when you go to prison." (Id.) No x-rays were taken and no dental services were performed at the Jail. (Id.)

After having his request for a higher quality mattress due to chronic back issues denied, Plaintiff began experiencing excruciating back pain in mid-April 2019, which made sleeping nearly impossible. (Id.) Despite filing several sick call requests and telling several nurses about his pain, Plaintiff was not seen by medical until June 18, 2019, when a nurse practitioner prescribed a muscle relaxer. (Id.) This medication was not delivered prior to Plaintiff leaving to attend court on June 19 and 20, and he did not receive his first dose until the night of June 21, 2019. (Id. at 8–9.) After Plaintiff took five daily doses of this medication, his order of additional medication was delayed for nearly two weeks because the first prescription had expired. (Id. at 8.)

Beginning just prior to this timeframe, in late March 2019, Plaintiff requested nail cutting service. (Id.) After a month's delay, Plaintiff was provided the opportunity to cut his own nails on April 27, 2019. However, Lt. Conrad ordered the staff and nurses to "keep Plaintiff's hands connected to a belly chain while cutting nails," which made the task of cutting fingernails difficult and made it impossible for Plaintiff to reach his toenails. (Id.) Plaintiff alleges that his is a "known diabetic and must take special care of his feet." (Id.) When he experiences an ingrown toenail, he must dig the toenail out of his skin, a process which is more difficult when the toenails are longer and which "initially often causes bleeding," "a dangerous and serious medical condition for a

4

diabetic." (Id.) Plaintiff states that since the nurses refuse to dig his ingrown toenails out, "I must take care of it myself." (Id.) He alleges that nurses have advised him that Lt. Conrad "advises his staff and other lieutenants not to allow the nurses assigned to nail cutting service into Plaintiff's building[,] causing long delays." (Id.) At the time he filed his complaint, Plaintiff was "in pain due to the ingrown nails" and he had put in at least four nail-cutting requests over the prior 6–7 weeks, without response. (Id.)

Plaintiff has sued Wellpath Medical, the current health and dental care provider for the Jail; Correct Care Solutions, the prior health and dental care provider; Davidson County; Davidson County Sheriff's Department; Harold Taylor, the CDM Facility Administrator responsible for all staff, programs, and care delivered at the facility; Tony Wilkes, the Chief of Corrections in charge of all jail facilities; Chris Brown, the MCC Facility Administrator in charge of the housing unit where Plaintiff currently resides and all staff, programs, and care delivered at that facility; Lt. Thomas Conrad, a correctional officer; M. Stephens, the Health Services Administrator in charge of all health care and dental staff at the Jail; S. Price, the Contract Coordinator Monitor responsible for overseeing health and dental care providers; Jenny Denest, a dental technician employed by "the provider," Wellpath Medical; Unknown Nurse Does 1–5; and Unknown Dental Technician Does 1–3. (Doc. No. 1 at 6–7.) Plaintiff claims violations of his rights under the Eighth and Fourteenth Amendments, 42 U.S.C. §§ 1985 and 1986, and the Americans with Disabilities Act, as well as state law claims of negligence, breach of contract, and conspiracy. (Id. at 5.) He seeks declaratory and injunctive relief, as well as an award of compensatory and punitive damages. (Id. at 11–13.)

5

**D. Analysis**

**1. Deliberate Indifference Claims**

Plaintiff claims violations of his right to constitutionally adequate medical and dental care under the Eighth and Fourteenth Amendments to the U.S. Constitution. As a pretrial detainee, Plaintiff's § 1983 claim of deliberate indifference to medical needs arises under the Fourteenth Amendment. Winkler v. Madison Cty., 893 F.3d 877, 890 (6th Cir. 2018) (quoting Phillips v. Roane Cty., 534 F.3d 531, 539 (6th Cir. 2008)). This claim is comprised of an objective and a subjective component. "The objective component requires the plaintiff to show that the medical need at issue is 'sufficiently serious.'" Richmond v. Huq, 885 F.3d 928, 938 (6th Cir. 2018) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "As the Supreme Court explained in *Farmer*, '[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000). To satisfy the subjective component, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id. at 939 (quoting Farmer, 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008). "Dental needs fall into the category of serious medical needs because dental care is one of the most important needs of inmates." Flanory v. Bonn, 604 F.3d 249, 253 (6th Cir. 2010) (quoting McCarthy v. Place, 313 F. App'x 810, 814 (6th Cir. 2008)) (internal quotation marks omitted). "Nevertheless, not all dental

problems constitute serious medical needs. Rather, '[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" McCarthy, 313 F. App'x at 814 (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)); see also Kyles v. Care & Comfort Comm., No. 18-cv-2003, 2019 WL 480519, at *2 (E.D. Wis. Feb. 7, 2019) (noting that "[s]everal courts have held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need"; finding that inmate who "does not allege that he suffered any pain or that the delay in getting his teeth cleaned caused him any harm" does not present a serious need). In McCarthy, the Sixth Circuit found that the inmate adequately alleged a serious medical need based on a cavity and "significant pain and discomfort" that went untreated for more than seven months, resulting in difficulty eating solid foods. 313 F. App'x at 814. Similarly, the Sixth Circuit in Flanory found that although a temporary deprivation of hygiene items would not satisfy the objective component of a medical needs claim, the complete deprivation of toothpaste for 337 days resulting in toothache, periodontal gum disease, and the need to extract a tooth was sufficient to establish a cognizable claim for denial of necessary care, as it resulted in physical injury that was more than de minimis. 604 F.3d at 254.

Here, the alleged need for prophylactic teeth cleaning and a crown to treat one tooth's sensitivity to cold and heat is not sufficiently serious to allow the inference that denial of those services posed a substantial risk of serious harm. Brown, 207 F.3d at 867. Plaintiff does not allege that he was denied dental hygiene products as in Flanory, or that he suffered any tooth decay or pain as a result of the denial of a professional cleaning. Regarding the alleged need for a crown to remedy sensitivity in his tooth, Plaintiff states that this sensitivity merely produced discomfort

which was tolerable enough that he did not request dental services after a crown was first denied in 2017. (Doc. No. 1 at 7–8.) In the absence of allegations demonstrating his objectively serious need for treatment, Plaintiff's claim that it was unconstitutional to provide "just cursory examinations or extractions" (id. at 10), and his request that the Jail be enjoined to "institute a plan where every inmate held over one year get[s] a minimum of teeth cleaning" (id. at 12), must fail. See Wishneski v. Dona Ana Cty., No. CV 08-0348 MCA/WPL, 2009 WL 10708582, at *4 (D.N.M. Feb. 19, 2009), report and recommendation adopted as modified, No. 08CV348 MCA/WPL, 2009 WL 10708217 (D.N.M. May 7, 2009) ("Wishneski does not have a constitutional right to prophylactic care . . . and neither Wishneski's complaint nor his subsequent filings indicate that he was harmed by the Detention Center's alleged policy of treating cavities by extraction only. The record does not reflect that Wishneski had any teeth pulled as a result of the policy or that he was otherwise adversely affected by it."). Accordingly, no viable constitutional claim is stated with respect to the two unnamed dental technicians' denial of Plaintiff's requests for routine teeth cleaning and a crown.

However, at this initial stage of the proceedings, and even though Plaintiff does not allege pain or difficulty eating or sleeping due to his dental condition, the Court finds that an objectively serious medical need is colorably claimed based on the dental technician's observation of "gaps in Plaintiff's gums [that] were growing larger and . . . were bleeding" at his June 3, 2019 examination.[1] (Id. at 8.) Insofar as such symptoms may be indicative of an infection, they present a need for medical attention that would be obvious to a layperson. Harrison, 539 F.3d at 518; see Blackmore v. Kalamazoo Cty., 390 F.3d 890, 899 (6th Cir. 2004) ("the test for deliberate

---

[1]    This observation, as well as the observation of excessive tartar buildup, appears to have been made by a third unnamed dental technician. However, Plaintiff attributes the denial of necessary care exclusively to Defendant Denest. (See Doc. No. 1 at 8.)

indifference is whether there exists a *substantial risk* of serious harm, and does not require actual harm to be suffered") (emphasis in original; internal citation and quotation marks omitted). In response to Plaintiff's request for treatment of his gums, Defendant Jenny Denest is alleged to have responded, "This is a short term facility and we only offer limited services, but you can have services when you go to prison. . . . See you again next year." (Doc. No. 1 at 8.) Denest is thus alleged to have acknowledged that treatment was appropriate, but to have denied treatment based on the Jail's policy of offering only limited dental services. Accordingly, the Court finds that Plaintiff has stated a colorable claim of deliberate indifference to serious medical needs based on the failure to provide dental treatment after June 3, 2019. This claim will be allowed to proceed against Defendant Denest.

Furthermore, because Denest's refusal to provide services reflects a policy of denying such services based on the Jail being "a short term facility," and because it is not clear at this point if this policy is put forward by the county or by Denest's corporate employer, or both, this claim will also proceed against Davidson County and Wellpath Medical.[2] See Starcher v. Corr. Med. Sys., Inc., 7 F. App'x 459, 465 (6th Cir. 2001) (finding that corporate provider of medical services to jail inmates is "clearly a state actor" under § 1983 and, like the county that operates the jail, can only be liable for harm directly caused by the execution of its policy).

Plaintiff's allegation that he began experiencing excruciating back pain in the middle of April, 2019, and filed several sick call requests and complained to "several nurses" but was not seen until June 18, 2019, supports a colorable deliberate indifference claim against "Unknown Nurse Does 1–5." He alleges that this pain was "equivalent to having a kidney stone" and "made

---

[2]     The claim will not proceed against Correct Care Solutions, "the prior health and dental care provider . . . in 2016," which Plaintiff believes to have subsequently merged with the current provider, Wellpath Medical. (Doc. No. 1 at 6.)

sleeping nearly impossible." (Doc. No. 1 at 8.) Nevertheless, he was not seen by medical staff or prescribed a muscle relaxant until two months later, when a nurse practitioner wrote the prescription to start the same day and "even made a phone call for someone to bring the medication" to Plaintiff. (Id.) "Where the alleged constitutional violation is a delay in medical treatment for a serious medical need, a slightly different analysis is employed to determine whether a plaintiff has satisfied the objective element of the test." Kimbrough v. Core Civic, No. 1:19-cv-00048, 2019 WL 2501558, at *2 (M.D. Tenn. June 17, 2019). In such cases:

> [The] court must examine the effect of the delay to ascertain whether the deprivation was sufficiently grave that it posed a substantial risk of serious harm. Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001). Where the delay-of-treatment claim involves an injury that is not obvious, a plaintiff must submit verifying medical evidence showing the detrimental effect of the delay. Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004) (citing Napier, 238 F.3d. at 742-43). Where the delay-of-treatment claim involves an obvious injury, a plaintiff makes the necessary showing by demonstrating that he experienced the need for medical treatment and that the need was not addressed within a reasonable time. Id. at 900. Where the injury is evident, the detrimental effect of the delay is not at issue because it is the delay itself which creates the substantial risk of harm. Id. at 890.

Kimbrough, 2019 WL 2501558, at *2.

Here, accepting Plaintiff's allegations as true, he had "documented chronic back issues" and began experiencing excruciating pain following a change in housing and the subsequent denial of his request for a higher quality mattress. (Doc. No. 1 at 8.) His complaint suggests that he received no treatment whatsoever for this exacerbation of his chronic pain until two months had passed, during which time he sought medical attention on multiple occasions. Accordingly, this claim involves an obvious injury, and Plaintiff's allegations "demonstrat[e] that he experienced the need for medical treatment and that the need was not addressed within a reasonable time." Kimbrough, 2019 WL 2501558, at *2. Plaintiff therefore states a colorable deliberate indifference claim against Unknown Nurse Does 1–5. See also Smith v. Knox Cty. Jail, 666 F.3d 1037, 1040

(7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference.").

Finally, Plaintiff states a nonfrivolous deliberate indifference claim by alleging that, despite being "a known diabetic [who] must take special care of his feet," he was denied the opportunity to trim his toenails often enough to keep them from growing into the skin of his toes, and was denied help from the nurses in removing the ingrown toenails from his skin, leaving him to do this himself and resulting in bleeding. (Doc. No. 1 at 9.) For purposes of initial review, the Court finds that Plaintiff alleges a serious medical need for diabetic footcare. See Hall-Bey v. Ridley-Turner, No. 2:04-cv-69-RLY-WGH, 2006 WL 1994795, at *9 (S.D. Ind. July 14, 2006), aff'd, 233 F. App'x 572 (7th Cir. 2007) (finding combination of diabetes and foot condition to present serious medical need). He adequately alleges Lt. Conrad's deliberate indifference in refusing to allow access to nail cutting services (or allowing access to a nail cutting instrument only while Plaintiff is shackled and therefore unable to cut his own toenails) as well as the nurses' deliberate indifference in refusing to treat his painful ingrown toenails. (Doc. No. 1 at 9.) See Woodward v. Cloninger, No. 3:18-cv-220-FDW, 2018 WL 4052170, at *1–2 (W.D.N.C. Aug. 24, 2018) (allowing diabetic detainee's deliberate indifference claim to proceed based on nurses' alleged refusal to dress and bandage his bleeding toes); Bovin Belskis v. DT Developers, Inc., No. 1:15-cv-00091-JAW, 2016 WL 5395833, at *13 (D. Me. Sept. 27, 2016) (declining to dismiss claim against nurses at pleading stage, despite lack of specificity in allegations against individual nurses; finding it reasonable to infer that each nurse was deliberately indifferent based on allegation of delay in proper wound care for diabetic inmate). These claims will be allowed to proceed for further development.

**2. Other Claims**

Plaintiff claims that the failure to treat his dental and other medical needs also amount to negligence under state law. (Doc. No. 1 at 10–13.) These state law negligence claims will be allowed to proceed under the Court's supplemental jurisdiction. <u>See</u> 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . .").

However, Plaintiff's isolated, conclusory statements that Defendants' conduct amounted to "a conspiracy in violation of state and federal law, including 42 U.S.C. § 1985"; a breach of a contract to which Plaintiff is a third-party beneficiary; an equal protection violation; and a violation of the Americans with Disabilities Act (Doc. No. 1 at 10–12)—without any factual allegations to support the existence of a conspiracy, contractual right, or discriminatory treatment—are not sufficient to state a plausible claim under any of these theories or statutes. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). All such claims will therefore be dismissed.

**3. Proper Defendants**

As stated above, Plaintiff's deliberate indifference claims will proceed against Defendants Davidson County and Wellpath Medical, as well as the individual Defendants Denest, Conrad, and Unknown Nurse Does 1–5 (all of whom are sued in their individual capacity only (Doc. No. 1 at

6, 7)). These claims are not plausibly stated against Correct Care Solutions and Unknown Dental Technicians 1–3, and they will therefore be dismissed from this action.

Furthermore, "the Davidson County Sheriff's Office is not a suable entity under § 1983." French v. Davidson Cty. Sheriff's Office, No. 3:18-cv-00073, 2018 WL 1763207, at *2 (M.D. Tenn. Apr. 12, 2018) (Campbell, J.) (citing Mathes v. Metro. Gov't of Nashville & Davidson Cty., No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.") (collecting cases)). As to Defendants Harold Taylor, Tony Wilkes, Chris Brown, M. Stephens, and S. Price, although these individuals are named at the outset of the complaint as responsible parties by virtue of their administrative or oversight responsibilities (Doc. No. 1 at 6–7), they are not alleged to have been personally involved in any wrongdoing and must therefore be dismissed from the action. Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints."); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991)); Sweat v. Sanders, No. 5:18-cv-557-REW, 2019 WL 3240018, at *3 (E.D. Ky. July 17, 2019) (citing Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir. 1984)) ("[Section] 1983 supervisor liability requires culpable conduct by the individual supervisor. It is not enough that a supervisor have a place or position of authority. Rather, he must actively engage in behavior leading to the wrong; inaction does not suffice.").

### III. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel to represent him in this matter. (Doc. No. 3.) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." Lavado, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. Id. at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the plaintiff to represent himself. Id. at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." Id. (internal quotation marks and citation omitted).

In this case, the issues are relatively straightforward, and Plaintiff has presented his claims ably. Because no exceptional circumstances exist to justify the appointment of counsel, Plaintiff's motion will be denied without prejudice to renewal if warranted by future developments in the case.

### IV. Conclusion

In light of the foregoing, Plaintiff's application to proceed IFP will be granted and the filing fee will be assessed by separate Order. This action will be allowed to proceed against Defendants Davidson County and Wellpath Medical, as well as the individual Defendants Denest, Conrad, and Unknown Nurse Does 1–5. Defendants Davidson County Sheriff's Office, Correct Care Solutions,

Unknown Dental Technicians 1–3, Harold Taylor, Tony Wilkes, Chris Brown, M. Stephens, and

S. Price will be dismissed from the action.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE