UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARY MONTGOMERY,

    Plaintiff,

v.

WELLPATH MEDICAL et al.,

    Defendants.

Case No. 3:19-cv-00675

Chief Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Alistair E. Newbern

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**<u>REPORT AND RECOMMENDATION</u>**

This civil rights action brought under 42 U.S.C. § 1983 arises from pro se Plaintiff Gary Montgomery's pretrial detention in the custody of the Davidson County Sheriff's Office (DCSO) at the Davidson County Jail in Nashville, Tennessee. (Doc. No. 78.) Montgomery alleges that Defendants Wellpath, LLC; the Metropolitan Government of Nashville and Davidson County (Metro); correctional officers Thomas Conrad and Shannun Bell; nurses Taylor Wall, Amber Dame, and Dayna West; nurse practitioner Mark Bailey; dentist Krystal Lewis; and dental hygienist Jenny Jaynes have failed to provide him with adequate medical and dental care while in DCSO custody. (*Id.*) Metro and Conrad have moved to dismiss Montgomery's claims against them under Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 82, 84), Montgomery has responded in opposition (Doc. Nos. 100, 101), and Metro and Conrad have replied (Doc. Nos. 110, 111).

For the reasons that follow, the Magistrate Judge will recommend that the motions to dismiss (Doc. Nos. 82, 84) be granted in part and denied in part.

## I. Factual and Procedural Background

### A. Montgomery's Initial and First Amended Complaints

Montgomery initiated this action on July 24, 2019,[1] by filing a complaint under 42 U.S.C. § 1983, alleging violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution; claims under 42 U.S.C. §§ 1985 and 1986, and the Americans with Disabilities Act (ADA); and claims of negligence, breach of contract, and conspiracy under Tennessee law. (Doc. No. 1.) The Court granted Montgomery's motion to appear *in forma pauperis* and screened the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and 42 U.S.C. § 1997e, finding that Montgomery had stated colorable claims for deliberate indifference to his serious medical needs under the Fourteenth Amendment against Metro, Wellpath, and "Jenny Denest"[2] in her individual capacity for denial of dental services after June 3, 2019; against five then-unknown nurse Defendants (Doe nurses) in their individual capacities for failure to provide timely treatment for back pain and refusal to treat his ingrown toenails; and against Conrad in his individual capacity for refusing to allow Montgomery to have his nails cut or for allowing Montgomery access to nail cutting instruments only while shackled and unable to cut his own toenails. (Doc. Nos. 9, 10.) The Court permitted Montgomery's state law negligence claims based

---

[1]     Under the standard governing filings by pro se incarcerated litigants—known as the "prison mailbox rule"—"a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts assume, "absent contrary evidence," that an incarcerated person delivered a legal filing to prison authorities "on the date he or she signed [it]." *Id.* Because Montgomery is incarcerated, the Court deems his complaint and all other filings to be filed on the date they were signed.

[2]     Montgomery described a dental hygienist named "Jenny Denest" in the initial and first amended complaints (Doc. Nos. 1, PageID# 1; Doc. No. 12, PageID# 58), but states in his second amended complaint that this individual's name is Jenny Jaynes, not Jenny Denest (Doc. No. 78).

on the failure to treat his medical and dental needs to proceed under the Court's supplemental jurisdiction and dismissed all other claims and defendants. (Doc. Nos. 9, 10.)

On February 26, 2020, Montgomery filed a motion for leave to amend his complaint to provide the full name of one of the Doe nurses, to provide the first names of the other four, and to add claims against Bell, along with a proposed amended complaint. (Doc. Nos. 11, 12.) The Court denied Montgomery's motion to amend as moot, finding that he could amend his complaint as of right under Federal Rule of Civil Procedure 15(a)(1) because no defendant had yet filed a responsive pleading. (Doc. No. 31.)

### B.    Montgomery's Second Amended Complaint

The Court permitted Montgomery to conduct limited discovery to obtain the full names and work addresses of the Doe nurses (Doc. No. 39) and Montgomery filed a second amended complaint against Wellpath and Metro; Conrad in his individual and official capacities; and Bell, Wall, Dame, West, Bailey, Lewis, and Jaynes in their individual capacities. (Doc. No. 78.) The second amended complaint contains the following allegations, which are taken as true for purposes of resolving the pending motions to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

#### 1.    Dental Care

Montgomery has been in DCSO custody since May 5, 2016. (Doc. No. 78.) He received a medical screening during the DCSO intake process but did not receive a dental screening at that time. (*Id.*) The jail does not provide dental floss or toothpicks or make those items available for sale. (*Id.*) Montgomery received a dental examination on June 21, 2017, after requesting treatment "due to a broken tooth and [temperature] sensitivity." (*Id.* at PageID# 379, ¶ 15.) During the examination, Montgomery asked Lewis and Jaynes for a dental cleaning and a crown to repair his broken tooth. (Doc. No. 78.) Both services were refused, and Jaynes told Montgomery, "We don't

clean teeth here, we only pull them." (*Id.* at PageID# 379, ¶ 16.) She offered to extract Montgomery's broken tooth, but Montgomery declined. (Doc. No. 78.) Having been told that extraction was the only treatment offered, Montgomery "continue[d] to tolerate the sensitivity discomfort" through 2018. (*Id.* at PageID# 380, ¶ 17.)

Montgomery received a second dental examination from Lewis and Jaynes on June 3, 2019. (Doc. No. 78.) At this visit, "it was noted that the gaps in [Montgomery's] gums were larger as measured with a probe and that they were bleeding[,]" and that "excessive calcified tarter build up was present." (*Id.* at PageID# 380, ¶ 18.) Montgomery "again requested [that] his teeth be cleaned, the gums treated[,] and a crown be put on the broken tooth to save it and help with the sensitivity." (*Id.*) Jaynes responded, "This is a short term facility and we only offer a limited service, but you can have dental services when you go to prison[,]" and told Montgomery she would "see [him] again next year." (*Id.*) Montgomery was eventually offered dental cleaning services after giving his complaint in this action to a case manager for copying. (Doc. Nos. 12, 78.)[3]

### 2. Back Pain

Montgomery experiences chronic back pain and made several requests for a higher-quality mattress and blanket, which were denied. (Doc. No. 78.) In April 2019, he "began experiencing excruciating stomach and back pain equivalent to having a kidney stone, which made sleeping nearly impossible." (*Id.* at PageID# 381, ¶ 21.) Despite filing several sick call requests and telling Wall, Dame, and other nurses about his pain, Montgomery "was not seen by a doctor or nurse practitioner until about June 18, 2019." (*Id.* at PageID# 382, ¶ 22.) Bailey prescribed Flexeril, a

---

[3]     This allegation, which appears in Montgomery's first and second amended complaints (Doc. Nos. 12, 78), apparently refers to the copying of Montgomery's first amended complaint, which he signed on July 24, 2019 (Doc. No. 1). The Court infers that Montgomery was offered dental cleaning services at some time between the drafting of the initial complaint and March 3, 2020, the date Montgomery signed the first amended complaint. (Doc. No. 12.)

muscle relaxer, but did not immediately receive it. (Doc. No. 78.) On one evening while Montgomery was awaiting his medication, he asked Wall "what was taking so long" and told her that he "was in continuous non-stop severe pain." (*Id.* at PageID# 383, ¶ 25.) Wall responded that she could not get Montgomery's medication for him and that he was "not the only person here [she] ha[d] to take care of." (*Id.*) "Bell then slammed the pie flap" of Montgomery's cell closed; told him, "You don't get to have any meds tonight[;]" and moved to the next cell with Wall. (*Id.*) Montgomery did not receive his medication that evening. (Doc. No. 78.) At around 9:00 p.m. on June 20, 2019, Montgomery received five of the ten prescribed doses of Flexeril. (Doc. No. 78.) He ordered additional medication, but the order was delayed for nearly two weeks because Montgomery's first prescription had expired. (*Id.*) Montgomery treated his pain during that time with nonsteroidal anti-inflammatory drugs (NSAIDs), including Tylenol, aspirin, and Mobic. (*Id.*)

Around September 4, 2019, Montgomery collapsed due to internal bleeding and a drop in blood pressure. (*Id.*) He was diagnosed with "a hole in his stomach area" and received "several endoscopy surgeries to stop the bleeding." (*Id.* at PageID# 385, ¶ 31.) He alleges that this condition was caused by Bailey and other Wellpath staff members prescribing him too many NSAIDs. (Doc. No. 78.)

### 3. Nail Care

Montgomery also alleges that he "is a known diabetic with ingrown nails" and that, because of his diabetes, "it is imperative that [he] take extremely good care of [his] feet for fear of losing them." (*Id.* at PageID# 383, ¶ 26.) Montgomery requested nail cutting assistance in March 2019. (Doc. No. 78.) On April 27, 2019, he was given an opportunity to cut his own nails, but "Conrad ordered staff and nurses to keep [Montgomery's] hands connected to a belly chain[,]" which made it difficult to cut his fingernails and impossible to reach his toenails. (*Id.* at PageID# 383, ¶ 26.) The longer Montgomery goes without cutting his ingrown toenails, "the more painful they become

and the deeper they grow into the skin." (*Id.* at PageID# 384, ¶ 27.) The ingrown toenails must be separated from the skin, which "often causes bleeding," "a dangerous and serious medical condition" "for a diabetic[.]" (*Id.*) When Montgomery asked West to help him lift and trim his ingrown toenails, she refused. (Doc. No. 78.) Other nurses have also refused to help Montgomery with his nails, stating that "it was against policy" (*id.* at PageID# 384, ¶ 27) and telling Montgomery that Conrad ordered staff and nurses not to "'allow the nurses assigned to nail cutting duty into the building'" where Montgomery is housed (*id.* at PageID# 385, ¶ 29). Montgomery's requests to see a podiatrist were also denied, and Montgomery has had to "take care of [his nails] himself when permitted." (*Id.* at PageID# 384, ¶ 27.)

Montgomery seeks declaratory and injunctive relief and an award of compensatory and punitive damages. (*Id.*)

### C.      Metro's and Conrad's Motions to Dismiss

Metro and Conrad have moved to dismiss all of Montgomery's claims against them under Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 82, 84.) Metro argues that dismissal is warranted because Montgomery has not shown "that a Metro policy was the 'moving force' behind any violation of his rights" and because "Metro is immune under the Tennessee Governmental Tort Liability Act (TGTLA) from [Montgomery's] state law claims." (Doc. No. 83, PageID# 406.) In response, Montgomery argues that the allegations in the second amended complaint were "intended to show a pattern of practice and custom of intentionally denying reasonable medical and dental care by Defendants Metro and Wellpath pursuant to their policies, rules and practices[,]" and that Metro is not immune from Montgomery's state-law claims. (Doc. No. 100, PageID# 482.) Metro replies that Montgomery has not shown that Metro was deliberately indifferent to his medical needs and that it is immune from Montgomery's state-law claims. (Doc. No. 110.)

Conrad argues that Montgomery's claims against him should be dismissed because the official capacity claims against Conrad are duplicative of the claims against Metro, Montgomery has not adequately alleged that Conrad was deliberately indifferent to his medical needs, and the facts in the second amended complaint are insufficient to state a claim for IIED. (Doc. No. 84.) Montgomery responds that his claims should not be dismissed because Conrad is able to be sued in both his official and individual capacities. (Doc. No. 101.) Montgomery also argues that Conrad "was aware [that Montgomery] had special needs regarding ingrown nails" but "nevertheless ordered medical staff to leave [Montgomery] in handcuffs and belly chains[,] making cutting toenails impossible" and leaving Montgomery "emotionally scarred." (*Id.* at PageID# 492.) In reply, Conrad reiterates the arguments in his motion to dismiss and argues that the Court should not consider any factual allegations raised for the first time in Montgomery's response memorandum. (Doc. No. 111.)

## II.      Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright*, 839 F.3d at 518. Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Montgomery appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. Analysis

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1982). A plaintiff alleging claims under § 1983 must make two showings to survive a motion to dismiss: "one, 'a plaintiff must allege that a defendant acted under color of state law'; and two, 'a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law.'" *Bright v. Gallia Cnty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012)). It is undisputed that Metro, as a municipality, and Conrad, as jail official, may be liable as state actors under § 1983. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978) (holding that "municipalities and other local government units" are "persons" who may be liable under § 1983); *Savage v. City of Pontiac*, 743

F. Supp. 2d 678, 683 (E.D. Mich. 2010) ("Municipal employees qualify as state actors . . . ."). The only remaining question at this stage of the case is whether Montgomery has plausibly alleged that Metro and Conrad deprived him of a protected right.

The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' towards the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). An Eighth Amendment deliberate indifference claim against an individual actor has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires showing "the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (emphasis in original) (quoting *Blackmore*, 390 F.3d at 897). "The subjective component requires a plaintiff to show that 'each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it.'" *Greene*, 22 F.4th at 605–06 (quoting *Griffith*, 975 F.3d at 568). This showing "entails something more than mere negligence," *Famer*, 511 U.S. at 835, and "equivalent to criminal recklessness[,]" *Greene*, 22 F.4th at 606 (quoting *Griffith*, 975 F.3d at 568).

Pretrial detainees like Montgomery "have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth

9

Amendment." *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022). Federal courts have long recognized that a pretrial detainee's "due process rights to medical care 'are at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020)). "Until recently, [the Sixth Circuit] 'analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id.* (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)). While the objective prong of the Eighth Amendment analysis still applies to Fourteenth Amendment pretrial detainee claims, the Sixth Circuit has modified the subjective prong for Fourteenth Amendment claims in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Brawner*, 14 F.4th at 594–97.

In *Kingsley*, the Supreme Court considered whether a pretrial detainee alleging excessive force in violation of the Fourteenth Amendment "must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable." 576 U.S. at 391–92. The Supreme Court held that the objective "standard is the correct one." *Id.* at 392. "In reaching that answer, the Court focused in part on the differences between the [Fourteenth Amendment's] Due Process Clause and the [Eighth Amendment's] Cruel and Unusual Punishments Clause." *Greene*, 22 F.4th at 606. The Supreme Court recognized that "[t]he language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Kingsley*, 576 U.S. at 400. "However, *Kingsley* did not address whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts." *Brawner*, 14 F.4th at 592.

In *Brawner*, the Sixth Circuit joined the Second, Seventh, and Ninth Circuits in "conclud[ing] that *Kingsley*'s reasoning required 'modification of the subjective prong of the deliberate-indifference test for pretrial detainees.'" *Greene*, 22 F.4th at 606 (quoting *Brawner*, 14 F.4th at 596). Now, under *Brawner*, a pretrial detainee alleging deliberate indifference to his or her serious medical needs "must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Brawner*, 14 F.4th at 596 (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). "In other words, a plaintiff must prove that the defendant acted 'deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Greene*, 22 F.4th at 606 (alteration in original) (quoting *Brawner*, 14 F.4th at 597).

Thus, under current Sixth Circuit precedent, a plaintiff alleging deliberate indifference under the Fourteenth Amendment must plead facts from which a court could draw the reasonable inference "(1) that [the detainee] had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to' the detainee."[4] *Id.* at 607 (alterations in original) (quoting *Brawner*, 14 F.4th at 597); *see also Iqbal*, 556 U.S. at 678.

---

[4]     One Sixth Circuit judge recently noted ongoing intra-circuit confusion in employing *Brawner*'s modification of the deliberate indifference standard under the Fourteenth Amendment:

> [O]ur circuit has struggled with how to apply the *Brawner* test in medical-needs cases. *See, e.g.*, *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022); *Smith v. Boyd Cnty. Fiscal Ct.*, No. CV 20-14-HRW, 2022 WL 992768, at *7 (E.D. Ky. Mar. 31, 2022). Did *Brawner* obviate an inquiry into defendants' mental states? *See Britt v. Hamilton Cnty.*, No. 21-3424, 2022 WL 405847, at *6–7 (6th Cir. Feb. 10, 2022) (Clay, J., dissenting). Did it merely modify that inquiry? *See Greene v. Crawford Cnty.*, 22 F.4th 593, 606 (6th Cir. 2022). And in so doing, did *Brawner* leave a

## A.  Metro's Motion to Dismiss

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95). The overarching question in resolving such claims is "whether there is a direct causal link between [the entity's] policy or custom and the alleged constitutional deprivation." *Id.* Accordingly, for a municipal liability claim "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014).

Metro argues that Montgomery's § 1983 claims against it should be dismissed because he has not alleged that the violation of a federal right took place or that a Metro policy or custom caused any such violation. (Doc. No. 83.) Metro also argues that Montgomery has not stated a claim under the ADA or Rehabilitation Act, that it is entitled to immunity from Montgomery's

---

subjective inquiry in place? *See Trozzi v. Lake Cnty.*, 29 F.4th 745, 754–55 (6th Cir. 2022).

*Westmoreland v. Butler Cnty.*, 35 F.4th 1051, 1052 (6th Cir. 2022) (Bush, J., dissenting from denial of rehearing en banc).

While questions may remain as to how *Brawner* applies in particular factual contexts, there is no question that *Brawner* is binding precedent and must be applied to deliberate indifference claims brought under the Fourteenth Amendment. *See, e.g.*, *Greene*, 22 F.4th at 607 (rejecting argument that *Brawner*'s modification of the subjective prong for Fourteenth Amendment deliberate indifference claims was non-binding dicta); *Trozzi*, 29 F.4th at 752 (holding that, "[g]oing forward, we are bound by *Brawner*'s views" that *Kingsley* requires modification of the subjective prong). The Court will therefore apply the Fourteenth Amendment deliberate indifference standard as articulated in *Brawner* and adopted in *Greene* to Montgomery's claims.

negligence and IIED claims under the TGTLA, and that Montgomery has not provided any factual support for his breach of contract claims. (*Id.*)

In response, Montgomery asserts that he was denied medical and dental care because of Metro's policies and states that he is a third-party beneficiary of Metro's contracts with its vendors. (Doc. No. 100.) Montgomery has not responded in opposition to Metro's arguments regarding his ADA, Rehabilitation Act, or other state law claims. (*Id.*) Metro replies that Montgomery has not shown the existence of "prior instances of unconstitutional conduct demonstrating that [Metro] has ignored a history of abuse" or otherwise shown that Metro was deliberately indifferent to his serious medical needs. (Doc. No. 110, PageID# 514 (alteration in original) (quoting *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005)).)

### 1.    Montgomery's § 1983 Claims

#### a.    Montgomery's Requests for Prophylactic Teeth Cleaning and a Crown

In screening Montgomery's initial complaint, the Court found that

> the alleged need for prophylactic teeth cleaning and a crown to treat one tooth's sensitivity to cold and heat is not sufficiently serious to allow the inference that denial of those services posed a substantial risk of serious harm. [Montgomery] does not allege . . . that he suffered any tooth decay or pain as a result of the denial of a professional cleaning. Regarding the alleged need for a crown to remedy sensitivity in his tooth, [Montgomery] states that this sensitivity merely produced discomfort which was tolerable enough that he did not request dental services after a crown was first denied in 2017. In the absence of allegations demonstrating his objectively serious need for treatment, [Montgomery's] claim that it was unconstitutional to provide "just cursory examinations or extractions" and his request that the Jail be enjoined to "institute a plan where every inmate held over one year get[s] a minimum of teeth cleaning" must fail.

(Doc. No. 9, PageID# 42–43 (citations omitted).)

As Metro asserts in its motion to dismiss, Montgomery's second amended complaint repeats his allegations that Jail staff did not provide prophylactic cleaning services and denied his request for a crown, but "does not contain any allegations of pain or difficulty eating or sleeping

due to his tooth's sensitivity that would indicate that this discomfort was no longer tolerable" or otherwise indicate "any objectively serious need for treatment." (Doc. No. 83, PageID# 412 n.3.) Instead, Montgomery asserts that he "continue[d] to tolerate the sensitivity discomfort" after his requests for cleaning and a crown were denied. (Doc. No. 78, PageID# 380, ¶ 17.) These allegations are insufficient to satisfy the objective prong of Montgomery's deliberate indifference claim. *See Wishneski v. Doña Ana Cnty.*, No. CV 08-0348, 2009 WL 10708582, at *4 (D.N.M. Feb. 19, 2009), *report & recommendation adopted as modified*, 2009 WL 10708217 (D.N.M. May 7, 2009) ("Wishneski does not have a constitutional right to prophylactic [dental] care . . . and neither Wishneski's complaint nor his subsequent filings indicate that he was harmed by the Detention Center's alleged policy of treating cavities by extraction only. The record does not reflect that Wishneski had any teeth pulled as a result of the policy or that he was otherwise adversely affected by it."). Because Montgomery has not plausibly alleged that the failure to provide dental cleanings or a crown violated his rights, Metro's motion to dismiss should be granted with respect to these allegations.

### b.      Denial of Dental Treatment After June 3, 2019 Examination

The Court found in its screening of Montgomery's initial complaint that Montgomery stated a nonfrivolous claim against Metro based on Jaynes's denial of dental treatment after his June 3, 2019 examination, stating:

> [A]t this initial stage of the proceedings, and even though Plaintiff does not allege pain or difficulty eating or sleeping due to his dental condition, the Court finds that an objectively serious medical need is colorably claimed based on the dental technician's observation of "gaps in [Montgomery's] gums [that] were growing larger and . . . were bleeding" at his June 3, 2019 examination. Insofar as such symptoms may be indicative of an infection, they present a need for medical attention that would be obvious to a layperson. *Harrison* [*v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)]; *see Blackmore*[*, 390 F.3d at 899] ("the test for deliberate indifference is whether there exists a *substantial risk* of serious harm, and does not require actual harm to be suffered") (emphasis in original; internal citation and quotation marks omitted). In response to [Montgomery's] request for treatment of

his gums, Defendant Jenny Denest is alleged to have responded, "This is a short term facility and we only offer limited services, but you can have services when you go to prison. . . . See you again next year." Denest is thus alleged to have acknowledged that treatment was appropriate, but to have denied treatment based on the Jail's policy of offering only limited dental services. Accordingly, the Court finds that [Montgomery] has stated a colorable claim of deliberate indifference to serious medical needs based on the failure to provide dental treatment after June 3, 2019. This claim will be allowed to proceed against Defendant Denest.

Furthermore, because Denest's refusal to provide services reflects a policy of denying such services based on the Jail being "a short term facility," and because it is not clear at this point if this policy is put forward by the county or by Denest's corporate employer, or both, this claim will also proceed against Davidson County and Wellpath Medical. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (finding that corporate provider of medical services to jail inmates is "clearly a state actor" under § 1983 and, like the county that operates the jail, can only be liable for harm directly caused by the execution of its policy).

(Doc. No. 9, PageID# 43–44 (third, fourth, and eighth alterations in original) (footnote and record citations omitted).)

Metro argues that Montgomery "has not put forth any well-pleaded facts [in his second amended complaint] to establish that" Metro has a policy of denying dental treatment to pretrial detainees (Doc. No. 83, PageID# 413) and asserts that Montgomery must plead the existence of "prior instances of unconstitutional conduct demonstrating that [Metro] has ignored a history of abuse" to state a municipal liability claim against it (*id.* (quoting *St. John*, 411 F.3d at 776)). Metro also argues that, "[e]ven if . . . Jaynes's alleged denial of [Montgomery's] requests and alleged statement regarding the jail being a 'short term facility' are sufficient to constitute a Metro policy or custom, . . . Jaynes is not a policymaker capable of establishing such a policy." (*Id.*)

At trial or at summary judgment, a plaintiff must prove the existence of a municipal custom or policy in one of four ways:

The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority;

(3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). At the motion to dismiss stage, however, a plaintiff need only plead sufficient factual content to allow the court to draw the reasonable inference that a municipal custom or policy caused the alleged violation. *See Warren v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:14-CV-2373, 2015 WL 3417844, at *6 (M.D. Tenn. May 27, 2015); *Naselroad v. Mabry*, Civil Action No. 5:14-389, 2015 WL 1412007, at *5 (E.D. Ky. Mar. 26, 2015); *see also* 6 James Buchwalter et al., *Federal Procedure, Lawyers Edition* § 11:326 (updated July 2022) ("A plaintiff need not specifically plead or identify an unconstitutional policy on the part of the municipality to survive a motion to dismiss a municipal liability claim under § 1983; at the very least, however, a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom."). The second amended complaint alleges that Jaynes told Montgomery, "This is a short term facility and we only offer a limited service, but you can have dental services when you go to prison!" (Doc. No. 78, PageID# 380.) The Court again finds this allegation, liberally construed as it must be at this stage of the proceedings, sufficient to support the reasonable inference that Metro had a policy of denying certain forms of dental treatment to persons detained at the Davidson County Jail based on its status as a "'short-term facility.'" Montgomery has therefore adequately pleaded a municipal liability claim against Metro. (*Id.*) Metro's motion to dismiss this claim should be denied.

### c.      Denial of Dental Hygiene Products

Montgomery alleges that, after being "in jail 37 months," in a "facility [that] does not offer for sale or provide dental floss or dental toothpicks[,]" he developed large gaps in his gums "that . . . were bleeding." (*Id.* at ¶ 18.) Metro argues that these allegations do not state a claim for deliberate indifference to his serious medical needs because Montgomery "does not allege a

'complete deprivation' of any dental hygiene items for any length of time, or that his alleged temperature sensitivity was the result any such deprivation." (Doc. No. 83, PageID# 412 n.3 (quoting *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)).)

"Dental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" *Flanory*, 604 F.3d at 253 (second alteration in original) (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008)). "'A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" *McCarthy*, 313 F. App'x at 814 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). Where a plaintiff's deliberate indifference claim is based on the deprivation of dental hygiene items, "[c]ourts have not found the objective component satisfied where the deprivation of hygiene items was temporary." *Flanory*, 604 F.3d at 254 (first citing *Harris v. Fleming*, 839 F.3d 1232, 1235–36 (7th Cir. 1988), then citing *McNatt v. Unit Manager Parker*, No. 3:99-cv-1397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000)).

The Sixth Circuit found in *Flanory* that an incarcerated plaintiff who was not given dental hygiene supplies for 337 days and was then diagnosed with periodontal disease and had one tooth extracted "ha[d] shown both that the deprivation was not temporary and that he suffered physical injury." *Id.* This Court previously found that the gaps and bleeding gums that Montgomery claims a dentist observed on a "cursory visual inspection" (Doc. No. 78, PageID# 380, ¶ 18) may be "indicative of an infection" and "present a need for medical attention that would be obvious to a layperson." (Doc. No. 9, PageID# 43 (quoting *Harrison*, 539 F.3d at 518).) Montgomery's allegations that he did not have access to dental floss for at least 37 months and developed these

symptoms thus satisfies the objective prong of his deliberate indifference claim at the pleading stage. Metro's motion to dismiss should be denied with respect to these allegations.

### d.     Montgomery's Requests for Nail Cutting

Metro argues that Montgomery's claim regarding nail cutting must be dismissed because it is based on Conrad's conduct and not any Metro policy. (Doc. No. 83.) It is true that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 692 (emphasis in original). But here, Montgomery alleges that several nurses "refused to help with [his] nails[,] citing it was against policy." (Doc. No. 78, PageID# 384, ¶ 27.) While Montgomery will have to prove this allegation to succeed on this claim at summary judgment or trial. At this stage, however, and liberally construed in conjunction with Montgomery's other allegations about lack of access to nail cutting, it is sufficient to permit the reasonable inference that a Metro or Wellpath policy prevented Montgomery cutting his ingrown nails and other treatment. *See Warren*, 2015 WL 3417844, at *6. Metro's motion to dismiss should be denied with respect to Montgomery's claims regarding nail cutting.

### e.     Montgomery's Requests for a Better Mattress and Extra Blanket

Montgomery alleges in the second amended complaint that he requested "a better quality mattress and extra blanket to deal with documented chronic back pain issues and to stay warm since he was assigned a corner cell" but that "medical advised they were not permitted to give those items to him" and "jail staff also denied similar requests." (Doc. No. 78, PageID# 381, ¶ 20.) In his response in opposition to Metro's motion to dismiss, Montgomery argues that the failure of medical and jail staff to provide a better mattress and extra blanket is an example of a Metro policy that violated his rights. (Doc. No. 100.) Metro replies that the denial of Montgomery's requests for

a better mattress and extra blanket does not constitute deliberate indifference to Montgomery's conditions of confinement. (Doc. No. 110.)

Prison officials are required to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer*, 511 U.S. at 825. To satisfy the objective prong of a conditions-of-confinement claim under the Eighth or Fourteenth Amendment, Montgomery must allege "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *cf. Hyman*, 27 F.4th at 1237 (noting that *Brawner*'s modification of the deliberate indifference standard in medical-needs cases "left the [objective] prong untouched"). "In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *cf. Wilson*, 501 U.S. at 304 (holding that "a low cell temperature at night combined with a failure to issue blankets" could rise to the level of a constitutional violation). Although Montgomery alleges that he requested "a better quality mattress and extra blanket to deal with" his "chronic back pain issues and to stay warm since he was assigned a corner cell[,]" (Doc. No. 78, PageID# 381, ¶ 20), he has not alleged that his cell was intolerably cold. *Cf. Wilson*, 501 U.S. at 304. And, while Montgomery has alleged that his back pain worsened after his request for a better mattress was denied, that fact alone does not elevate the denial of his request for a better mattress to the level of a constitutional violation. *See Ross v. Davidson Cnty. Sheriff's Off.*, No. 3:19-cv-00726, 2019 WL 4573507, at *2, 5 (M.D. Tenn. Sept. 20, 2019) (finding that pretrial detainee's allegations that he "experienc[ed] back pain, neck, and shoulder pain and [suspected] bed sores after jail officials denied his request for a better mattress "d[id] not rise to the level of a constitutional violation").

The denial of Montgomery's request for a better mattress also does not constitute deliberate indifference to Montgomery's serious medical needs. Montgomery alleges that his "chronic back pain issues" were "documented" (Doc. No. 78, PageID# 381, ¶ 20), but there is not sufficient factual information in the second amended complaint from which to infer that his condition had "'been diagnosed by a physician as mandating treatment'" or was "'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d at 938. Nor can the Court reasonably infer that the staff who denied Montgomery's requests "acted '"recklessly in the face of an unjustifiably high risk" that [was] either "known or so obvious that it should be known"' to a reasonable official in [their] position." *Hyman*, 27 F.4th at 1237; *see also Ross*, 2019 WL 4573507, at *5 (dismissing claims for denial of request for better mattress where "[p]laintiff ha[d] not named a defendant responsible for denying [p]laintiff's request for a thicker mattress who acted with deliberate indifference to [p]laintiff's serious medical needs"). Because Montgomery has not plausibly alleged that the denial of his requests for an extra blanket and better mattress violated a federal right, those claims cannot proceed against Metro and should be dismissed. *See Bright*, 753 F.3d at 660.

### 2. Montgomery's ADA and Rehabilitation Act Claims

Metro moves to dismiss Montgomery's claims under the ADA and Rehabilitation Act, arguing that these claims should be dismissed "for the same reasons the Court previously identified" in its order screening Montgomery's initial complaint. (Doc. No. 83, PageID# 410.) Because Montgomery has not responded to Metro's arguments that his ADA and Rehabilitation Act claims should be dismissed, any argument with regard to the viability of these claims is waived. *See Humphrey v. U.S. Atty' Gen.*, 279 F. App'x 328, 331 (6th Cir. 2008).

Even if Montgomery had opposed Metro's motion to dismiss these claims, Montgomery has not stated a claim on which relief can be granted under the ADA or Rehabilitation Act. In

screening Montgomery's initial complaint, the Court found that Montgomery's "isolated, conclusory statements that Defendants' conduct amounted to . . . a violation of the Americans with Disabilities Act—without any factual allegations to support the existence of . . . discriminatory treatment—are not sufficient to state a plausible claim under any of these theories or statutes." (Doc. No. 9, PageID# 47 (citation omitted).) In his second amended complaint, Montgomery alleges that the "failure of . . . Metro, Wellpath, . . . Conrad and their staffs to ensure [Montgomery] receives timely and adequate medical and dental care violated [Montgomery's] rights under . . . the Americans with Disabilities Act and the Rehabilitation Act as a known diabetic." (Doc. No. 78, PageID# 389, ¶ 5.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act protects any "otherwise qualified individual with a disability" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance" "solely by reason of his or her disability[.]" 29 U.S.C. § 794(a). In order to state a claim under Title II of the ADA or § 504 of the Rehabilitation Act, a plaintiff must plausibly allege "that he (1) is disabled under the statutes, (2) is 'otherwise qualified' for participation in [a state or local government] program, and (3) 'is being excluded from participation in, denied the benefits of, or subjected to discrimination 'because of his disability or handicap, and (4) (for the Rehabilitation Act) that the program receives federal financial assistance." *Hollis v. Howard*, No. 16-5115, 2016 WL 9804159, at *2 (6th Cir. Dec. 21, 2016) (alteration in original) (quoting *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016)).

Even if the Court assumes that Montgomery's diabetes qualifies as a disability under the ADA and the Rehabilitation Act, Montgomery's amended complaint does not contain sufficient facts for the Court to reasonably infer that he has been excluded from participation in, denied the benefits of, or subjected to discrimination under any public program because of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Although Montgomery makes the conclusory allegation that he was denied medical and dental care in violation of the ADA and Rehabilitation Act, he has not alleged any facts suggesting that he was denied access to these services because of a disability. *See Johnson v. Papendick*, No. 14-cv-14630, 2015 WL 4771381, at *8 (E.D. Mich. June 4, 2015), *report and recommendation adopted by* 2015 WL 4771340 (E.D. Mich. Aug. 13, 2015) ("Even assuming, *arguendo*, that Plaintiff is disabled under the ADA, a prisoner such as Plaintiff who alleges that he is receiving incompetent treatment for a medical problem while in prison is not complaining of being excluded from a prison service, program, or activity, or of discrimination because of his disability and, therefore, fails to state a claim under the ADA."). Because he has not alleged that he was subjected to any discriminatory treatment, Montgomery has not stated a claim under the ADA or Rehabilitation Act, and those claims should be dismissed.

### 3.    Montgomery's Breach of Contract Claims

Metro argues that Montgomery's breach of contract claims should also be dismissed for the reasons given in the Court's order screening Montgomery's initial complaint. (Doc. No. 83.) In that order, the Court dismissed Montgomery's breach of contract claims because Montgomery had not presented "any factual allegations to support the existence of a . . . contractual right[.]" (Doc. No. 9, PageID# 47.) In his second amended complaint, Montgomery alleges that Metro and Wellpath failed "to provide meaningful medical and dental care[,]" which "constitutes a breach of contract as to [Montgomery] as a 'third-party beneficiary' of the contract." (Doc. No. 78, PageID# 387, ¶ 37.) Montgomery has not alleged any additional facts that would cure the

deficiencies that led to the dismissal of the breach of contract claims in his initial complaint. Accordingly, the breach of contract claims in Montgomery's amended complaint should be dismissed.

### 4. Montgomery's Other State-Law Claims

Metro argues that it is immune from liability for Montgomery's state law negligence and IIED claims under the TGTLA. (Doc. No. 83.) Montgomery has responded that Metro should not be allowed to claim immunity for violations of his constitutional rights or intentional torts. (Doc. No. 100.)

The TGTLA codifies sovereign immunity for governmental entities in Tennessee, including "any municipality, metropolitan government, [or] county . . . ." Tenn. Code Ann. § 29-20-102(3)(A). The statute provides that "governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities" except as otherwise provided in the statute. Tenn. Code. Ann. § 29-20-201(a). The TGTLA removes governmental immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury arises out of" several exceptions, including "infliction of mental anguish . . . or civil rights" violations. Tenn. Code Ann. § 29-20-205(2) (emphasis added). The TGTLA's preservation of governmental immunity for claims arising from the "infliction of emotional distress," Tenn. Code Ann. § 29-20-205(2), immunizes municipalities from suits arising from the intentional infliction of emotional distress caused by government employees. *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005). Because Montgomery cannot hold Metro liable for his IIED claim under the TGTLA, that claim must therefore be dismissed as to Metro.

Likewise, the TGTLA's civil rights exception "preserves immunity for suits claiming negligent injuries arising from civil rights violations" under the United States Constitution and 42

U.S.C. § 1983. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2011). Montgomery's negligence claim arises from the same circumstances—the alleged denial of medical and dental care—as his deliberate indifference claims under § 1983. Metro is immune from Montgomery's negligence claim and that claim must also be dismissed.

## B.  Conrad's Motion to Dismiss

Conrad has moved to dismiss all of Montgomery's claims against him, arguing that any official-capacity claims against him are duplicative of Montgomery's claims against Metro, that Montgomery has failed to state a claim on which relief can be granted for deliberate indifference to his medical needs or IIED, and that Conrad is entitled to qualified immunity from Montgomery's deliberate indifference claim. (Doc. No. 84.) Montgomery responds that Conrad can be sued in his official and individual capacities and that he has pleaded sufficient facts to state claims against Conrad for deliberate indifference and IIED. (Doc. No. 101.)

### 1.  Official-Capacity Claims

It is well-settled that an official capacity suit against a government official is effectively a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's § 1983] suit is against [the Sheriff] in his *official* capacity, it is nothing more than a suit against Franklin County itself." (citing *Graham*, 473 U.S. at 166)). Because Metro is a defendant to the claims Montgomery asserts against Conrad, there is no basis for a separate official capacity suit against Conrad, and Montgomery's official-capacity claims against him should be dismissed. *See, e.g.*, *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:06-cv-0108, 2008 WL 501327, at *6 (M.D. Tenn. Feb. 21, 2008)

(dismissing official capacity § 1983 claims against government officer where the government entity was also named as a defendant to those claims).

### 2. Deliberate Indifference to Montgomery's Serious Medical Needs

Conrad argues that he is entitled to qualified immunity from Montgomery's individual-capacity § 1983 claims against him. (Doc. No. 85.) The qualified immunity doctrine shields government officials performing discretionary functions from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The goal behind qualified immunity is to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because the qualified immunity analysis is fact-intensive and the precise factual basis for a plaintiff's claims may be hard to identify at the pleading stage, courts typically resolve qualified immunity defenses in the context of a motion for summary judgment. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019) ("[A]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (quoting *Osberry v. Slusher*, 750 F. App'x 385, 391 (6th Cir. 2018))); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (holding "that it is 'generally inappropriate for a district court to grant a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity'" because "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" (alteration in original) (citations omitted)). Overcoming the qualified immunity defense at the motion to dismiss stage is a "low bar," and courts "generally den[y] qualified immunity at the

motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief." *Marvaso v. Sanchez*, 971 F.3d 599, 605–06 (6th Cir. 2020).

To overcome Conrad's claim of qualified immunity in this case, Montgomery must allege facts that "plausibly mak[e] out of a claim that [Conrad's] conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Cahoo*, 912 F.3d at 898 (first alteration in original) (quoting *Courtright*, 839 F.3d at 518). This test can be broken into two inquiries. "First, taken in the light most favorable to [Montgomery], do the facts alleged show that the officer's conduct violated a constitutional right?" *Id.* at 897 (quoting *Seales v. City of Detroit*, 724 F. App'x 356, 359 (6th Cir. 2018)); *see also Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant."). The second inquiry is whether the right is clearly established. *Cahoo*, 912 F.3d at 897 (quoting *Seales*, 724 F. App'x at 359). A constitutional right is clearly established where existing precedent has placed the constitutionality of the challenged conduct "beyond debate," such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The precedent clearly establishing a right can be in the form of a case of 'controlling authority or a robust consensus of cases of persuasive authority.'" *Latits v. Phillips*, 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)).

### a.    Violation of Constitutional Rights

Conrad does not dispute that Montgomery has pleaded sufficient facts to satisfy the objective prong of his deliberate indifference claim regarding inadequate nail care, but argues that

Montgomery's deliberate indifference claim against him should be dismissed because Montgomery has not alleged "that . . . Conrad was subjectively aware of a substantial risk of serious harm due to [Montgomery's] status as a diabetic." (Doc. No. 85, PageID# 429.)

Montgomery's second amended complaint alleges that (1) he is a "known diabetic with ingrown nails" (Doc. No. 78, PageID# 383, ¶ 26); (2) he requested attention to his ingrown toenails in late March 2019 and was allowed to cut his nails on April 27, 2019; (3) Conrad kept Montgomery's hands connected to a belly chain while he cut his nails on that date, making it "impossible to reach the toe nails" (*id.*); (4) Montgomery asked West and other nurses to help him with his ingrown nails and they refused; (5) Montgomery asked to see a podiatrist and that request was denied; (6) Montgomery filed grievances related to this issue; (6) Conrad ordered jail staff and nurses "to 'not allow the nurses assigned to nail cutting duty into the building'" "where [Montgomery] resided" (*id.* at PageID# 385, ¶ 29); and (7) Montgomery submitted at least four nail-cutting requests in June and July 2019 but received no response (Doc. No. 78). These allegations, construed in the light most favorable to Montgomery, are sufficient to support a reasonable inference that Conrad gave directions to staff restricting Montgomery's ability to cut his nails and either intentionally or recklessly ignored the risk that lack of foot care posed to Montgomery as a diabetic. *See Greene*, 22 F.4th at 607. Montgomery's allegations that he interacted personally with Conrad about his need for nail care, repeatedly asked to cut his nails, and filed grievances and that his diabetes was "known" are sufficient at this stage to allege that the risk of harm was "'either known or so obvious it should be known'" to Conrad. *Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836). Accordingly, Conrad is not entitled to dismissal on this ground.

### b.      Clearly Established Constitutional Rights

Conrad argues that he is entitled to qualified immunity from Montgomery's deliberate indifference claim because "[t]here is no clearly established law that would have put . . . Conrad on notice that he could be held liable for a claim of deliberate indifference to medical needs for his conduct of (1) requiring an inmate's hands to be attached to a belly chain while the inmate has access to a nail cutting instrument or (2) limiting an inmate's access to nail trimming services." (Doc. No. 85, PageID# 430.) However, as the Sixth Circuit recently acknowledged, "[c]ourts have frequently rejected officials' contentions that a 'legal duty need . . . be litigated and then established disease by disease or injury' in the context of [deliberate indifference] claims." *Murray v. Dep't of Corr.*, 29 F.4th 779, 790 (6th Cir. 2022) (second alteration in original) (quoting *Est. of Clark v. Walker*, 865 F.3d 544, 552, 553 (7th Cir. 2017)). "[T]he Supreme Court 'do[es] not require a case directly on point [if] existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1097 (6th Cir. 2019) (second, third, and fourth alterations in original) (quoting *al-Kidd*, 563 U.S. at 741). A pretrial detainee's right to medical care was long established in 2019. *See Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) ("As early as 1972, this court stated that 'where the circumstances are clearly sufficient to indicate the need for medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process'" and "in 1992, this court explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987" (quoting *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972)). *See also Murray*, 29 F.4th at 790–91 (holding that denial or delay of adequate treatment for serious medical needs is a clearly established violation of incarcerated plaintiff's Eighth Amendment rights).

Montgomery has alleged—and Conrad has not disputed—that the combination of his ingrown toenails and diabetes presented a serious medical need. (Doc. No. 78.) Montgomery has

also alleged facts supporting the reasonable inference that Conrad took intentional actions to deny him nail care to address his medical needs. (*Id.*) Those allegations, accepted as true and construed in the light most favorable to Montgomery, are sufficient to allege the violation of Montgomery's clearly established right to medical treatment. *See, e.g.*, *Parr v. United States*, Civ. Action No. 5:15-299, 2017 WL 1097196, at *3 (E.D. Ky. Mar. 23, 2017) (denying motion to dismiss Eighth Amendment claim on qualified immunity grounds, finding that plaintiff had plausibly alleged violation of clearly established right by "put[ting] forth a plausible claim that [defendant] knew about his [diabetes-related foot condition], and yet forced him to walk or move around on broken feet and hindered his ability to see a podiatrist"). Accordingly, Conrad has not shown that he is entitled to qualified immunity at the motion to dismiss stage.

### 3. Intentional Infliction of Emotional Distress

To state a claim for IIED under Tennessee law, a plaintiff must allege that (1) the conduct complained of was intentional or reckless; (2) the conduct was "'so outrageous that it is not tolerated by civilized society'; and" (3) "the conduct complained of must result in serious mental injury." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31, 41 (Tenn. 2005) (quoting *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)). Conrad argues that Montgomery has not alleged facts sufficient to show that Conrad's alleged conduct was outrageous or that he experienced a serious mental injury. (Doc. No. 85.)

Even if the Court assumed that Montgomery has plausibly alleged that Conrad's conduct was sufficiently intentional and outrageous to state a claim for IIED, Montgomery has not alleged that he experienced any serious or severe mental injury that resulted from Conrad's actions. A plaintiff seeking damages for IIED must meet an "exacting standard." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). Tennessee courts have limited recovery for IIED to mental injury that "is 'so severe that no reasonable [person] would be expected to endure it.'" *Arnett v. Domino's*

*Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) (alteration in original) (quoting *Miller*, 8 S.W.3d at 615 n.4). Recovery is not available for "fright or fear alone" but rather "should be only for 'serious or severe emotional injuries which disable a reasonable, normally constituted person from coping adequately with the stress.'" *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 208 (Tenn. 2012) (quoting *Ramsey v. Beavers*, 931 S.W.2d 527, 532 (Tenn. 1996)).

The only references in Montgomery's complaint to a mental or emotional injury are his statement that Conrad's conduct "constitute[s] the tort of intentional infliction of emotional distress under Tennessee state law" (Doc. No. 78, PageID# 387, ¶ 35) and his request for monetary damages from several other defendants for "emotional injury and for pain and suffering" (*id.* at PageID# 391, ¶¶ 2, 3). Even if the Court assumed that Montgomery has plausibly alleged that Conrad's conduct was sufficiently intentional and outrageous to satisfy the second element of an IIED claim, Montgomery's second amended complaint does not allege any "serious or severe" emotional distress that resulted from Conrad's actions. *See Hall v. Wyndham Vacation Ownership, Inc.*, No. 3:10-CV-406, 2011 WL 1196868, at *6 (E.D. Tenn. Mar. 29, 2011) (finding that plaintiff had not adequately pleaded third element of IIED claim under Tennessee law where she "alleged that she suffered 'significant mental injury' that rendered her unable to return to work" but "alleged no other facts relating to her alleged mental injury"); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[5] Because Montgomery has not provided factual allegations to support the elements of an IIED claim, Conrad's motion to dismiss should be granted with regard to that claim.

---

[5]     In his reply brief, Montgomery argues that he was "emotionally scarred" by Conrad's actions (Doc. No. 101, PageID# 492), but the Court may not consider these allegations in resolving Conrad's motion to dismiss because they were not included in the pleadings. *See Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012). Further, the conclusory allegations in

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Metro's and Conrad's motions to dismiss (Doc. No. 82, 84) be GRANTED IN PART AND DENIED IN PART.

Metro's motion (Doc. No. 82) should be GRANTED with respect to Montgomery's § 1983 claims based on his requests for prophylactic teeth cleaning and a crown and his requests for a better mattress and extra blanket; Montgomery's ADA and Rehabilitation Act claims; and Montgomery's claims for IIED, breach of contract, and negligence under Tennessee law. The Magistrate Judge further RECOMMENDS that Conrad's motion (Doc. No. 84) be GRANTED with respect to Montgomery's IIED claims and all claims brought against Conrad in his official capacity.

Both motions should be DENIED with respect to Montgomery's other claims.

---

Montgomery's response do not include sufficient "facts relating to [Montgomery's] alleged mental injury" to state an IIED claim under Tennessee law. *See Hall*, 2011 WL 1196868, at *6.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of August, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge